**Robert R. TAYLOR, Plaintiff–Appellant,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendant–Appellee.**

No. 90–1360.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1990.

Decided Dec. 27, 1990.

Rehearing Denied Jan. 15, 1991.

Jeanne L. Sathre, David Herndon, Lakin & Herndon, Wood River, Ill., Judith M. Cannavo, Indianapolis, Ind., for plaintiff-appellant.

Victor L. Frost, II, Bruce A. Hugon, Frost & Hugon, Indianapolis, Ind., James W. Owens, Paducah, Ky., for defendant-appellee.

Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

Appellant Robert R. Taylor brought suit against his employer, National Railroad Passenger Corporation (Amtrak), pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* Taylor alleged that he sustained a back injury on November 18, 1986, caused by Amtrak's negligence in failing to provide adequate lighting, tools and instruction to perform his assigned task. The case was tried before a jury which returned a verdict for the defendant Amtrak.

In this appeal, Taylor challenges the district court's decision denying his motion for judgment notwithstanding the verdict (JNOV) or in the alternative a motion for new trial. Specifically, Taylor contends that he is entitled to a new trial because the district court erroneously allowed the defendant to introduce evidence of prior back complaints that were contained in his military records dated December, 1972. Taylor further complains that the district court erred by allowing the defendant to introduce his employment application on which Taylor noted that he did not have any back injuries. Taylor disputes the district court's ruling that the military records and the employment application were relevant and properly admitted as impeachment evidence.

## I. FACTS

Taylor's injury occurred when he was attempting to remove a lockring from a metal conduit. The lockring became stuck, suggesting that the threats were damaged. Taylor and co-worker Harry R. Kinder, Jr. decided to use a prybar to remove the ring. While doing so, the prybar slipped, causing Taylor to fall forward injuring his back. Taylor's injury was diagnosed as a herniated disk.

Taylor introduced evidence that he was instructed to attempt to salvage the parts which he was removing. He also introduced evidence that the lighting was inadequate. The testimony revealed that the employees were allowed to bring in additional light, but were often limited in doing so for fear of blowing a circuit and causing a power loss. The evidence further demonstrated that Amtrak provided tools for its employees; however, there were often shortages in the supply of these tools. Taylor also introduced expert testimony that the proper tool to use would be a spanner wrench which was unavailable to Amtrak employees. This expert further testified that of all "available" tools, Taylor used the proper one. The testimony re-

flects that Taylor was never instructed on the proper way to remove a damaged lockring. Finally, Taylor testified that he did not seek the advice of his supervisor, suggesting that such a request would be futile.

Amtrak introduced testimony that Taylor used the wrong tool. Instead of trying to remove and salvage the lockring, Taylor should have chiseled or burned it off. The testimony suggested that Taylor as an experienced journeyman electrician should have known that Amtrak would not have wanted to save a damaged lockring. Amtrak admitted that it never specifically instructed its employees to use such a method, but countered that this information should have been in the province of an experienced electrician. Taylor's supervisor, Michael J. Scaringe, testified that he would have instructed Taylor to use another method had he asked, but Taylor never asked.

Prior to trial, Taylor filed a motion in limine seeking to exclude evidence of any prior or subsequent back injuries. This motion was partially granted. However, the district court denied the motion as it related to the military medical records if relevance could be demonstrated.

During cross-examination, Amtrak asked Taylor if he had ever had any back problems prior to the accident.[1] Taylor responded that he had not. The defendants then showed Taylor his military records. The records showed that on two occasions in 1972 Taylor went to the Army medical clinic complaining of back pain. The defense next asked Taylor to identify his Amtrak employment application, dated June 28, 1979, which indicated that Taylor

had never experienced back problems. These records were admitted into evidence and passed to the jury.

After the jury returned a verdict in favor of Amtrak, Taylor filed a motion for JNOV or alternatively a motion for a new trial. In this motion, Taylor complained that the military records and the employment application were irrelevant, immaterial and prejudicial. The district court ruled that the military medical records and the employment application were properly admitted for the limited purpose of impeachment.[2] Therefore, Taylor's motions were denied. Taylor raises the same arguments before this court on appeal.

## II. ANALYSIS

Before determining whether the district court erred in denying Taylor's motions for JNOV or new trial, we must determine whether the district court erroneously admitted the military medical records and the employment application. On appeal Taylor argues that this evidence was irrelevant and prejudicial. He points to the fact that the back pain complained of in the military medical records occurred in December, 1972, which is 14 years earlier than the accident which is the subject of this suit. Taylor argues that the great lapse of time and the vagueness of the medical notations makes this evidence completely irrelevant to this case. The appellant next contends that the admission of this evidence was highly prejudicial because the jury was allowed to infer that Taylor had a pre-existing back problem not caused by this accident. In addition, Amtrak then suggested

1. Taylor made a timely objection to the relevance of this evidence. Taylor noted both that there was no connection between the prior injury and his current medical condition and that the evidence could not be properly used as impeachment evidence. The trial court overruled the objection.

2. In his order denying Taylor's post-trial motions, the district court stated:

The circumstances surrounding the admission of this evidence are as follows. At trial, defendant sought to admit evidence of plaintiff's prior back injury in order to impeach the plaintiff's credibility. Plaintiff's employment application with National Railroad Passenger Corp. asked whether he had ever injured his back. Plaintiff responded that he had not, when in fact, he had injured his back while serving in the military. The defendant sought to admit evidence of this prior back injury to impeach the plaintiff's credibility. I allowed the evidence to be admitted for this purpose. At no time during the trial was Amtrak required to demonstrate the relevance of this evidence or to explain the purpose for which it sought to admit this evidence. When Taylor objected, the district court simply overruled the objection without offering any explanation for the ruling.

to the jury that Taylor lied on his employment application concerning his back problems based on these unreliable medical notations. Taylor argues that the evidence would still be inadmissible even if it was admitted solely for impeachment purposes. Taylor contends that Amtrak should not be allowed to admit otherwise inadmissible evidence by raising a post-trial argument that it was impeachment evidence.

Amtrak contends that the use of this information for impeachment purposes is entirely permissible. Amtrak states that it never argued that Taylor had a pre-existing back problem. Amtrak concedes that the plaintiff's injuries were caused by the accident at its place of employment. Indeed, Amtrak affirmatively acknowledges that this evidence would be inadmissible to prove a pre-existing injury. However, because this evidence was introduced as impeachment evidence, not substantive evidence, it is purportedly relevant and admissible. Finally, Amtrak argues that it was Taylor's duty to clear up any possible confusion over this evidence by requesting a limiting instruction. Because Taylor did not do so, there can be no reversible error.

### A. Admissibility of Evidence

 Taylor contends that this evidence was irrelevant and immaterial; therefore, it could not be used for impeachment purposes. Our standard of review in determining whether the district court committed reversible error in either the admission or exclusion of evidence is abuse of discretion. *Geitz v. Linsey*, 893 F.2d 148, 151

**3.** *See also United States v. Goot*, 894 F.2d 231, 239 (7th Cir.1990); *United States v. Rovetuso*, 768 F.2d 809, 817 (7th Cir.1985), *cert. denied*, 474 U.S. 1076, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986); *United States v. Carter*, 720 F.2d 941, 949 (7th Cir.1983); *United States v. Jarrett*, 705 F.2d 198, 207 (7th Cir.1983); *United States v. Harris*, 542 F.2d 1283, 1306 (7th Cir.1976); *United States v. Jansen*, 475 F.2d 312, 316 (7th Cir. 1973).

This rule does not apply when the cross-examination is responding to testimony elicited during direct examination. *United States v. Taylor*, 728 F.2d 864, 873–74 (7th Cir.1984). Therefore, if plaintiff Taylor testified to these matters on direct examination, he would have opened the door to such questions.

A review of the record shows that this door was not opened. During direct examination, the following colloquy took place:

(7th Cir.1990). Because Amtrak admits, as it must, that this evidence would be inadmissible as substantive evidence, we must determine whether Amtrak could properly use this evidence to impeach Taylor.

 The rule in this circuit is that "a witness may not be impeached by contradiction as to collateral or irrelevant matters elicited on cross-examination." *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 604 (7th Cir.1985) (citing *United States v. Lambert*, 463 F.2d 552, 557 (7th Cir.1972)).[3] "A matter is collateral if the impeaching fact could not have been introduced into evidence for any purpose other than contradiction." *United States v. Jarrett*, 705 F.2d 198 (7th Cir.1983), *cert. denied*, 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984). In *Simmons*, this court explained:

> The [collateral evidence] rule was apparently developed in conjunction with a particular type of impeachment—impeachment by contradiction.... the collateral evidence rule limits the extent to which the witness' testimony about non-essential matters may be contradicted by extrinsic proof.

*Simmons*, 762 F.2d at 604.

 In their appellate brief, Amtrak succinctly explains why it believes this evidence is relevant. "In a routine example of impeachment by contradiction, Taylor's military medical records contradicted the false statements he made when he applied for employment with Amtrak in 1979 and when asked about prior back problems during

> Q. The entire time you have been at Amtrak, from July 9th of '79 until the day you were injured, November 18, 1986, have you had any trouble involving injuries, anything involving the spine in your low back?
> A. No.
> Q. So prior to November 18, 1986, what condition was your back in?
> A. Good condition.

Trial Transcript at p. 28.

These questions limited the time span to Taylor's employment at Amtrak. Amtrak does not contend that it sought to admit these documents to contradict this testimony, nor did Amtrak even notify this court of this direct examination testimony. As such, it does not appear that Taylor opened the door to the admission of this extrinsic evidence.

cross-examination." [4] (Defendant–Appellee's Brief at 6, 7.) Amtrak freely admits that this evidence would be inadmissible for any purpose other than impeachment. In addition, Amtrak does not contend that this evidence was necessary to impeach a contradictory statement made by Taylor on direct examination. In short, it appears that this extrinsic evidence falls directly within the prohibitions of the collateral evidence rule. Taylor's employment application and military medical records are clearly collateral matters.

■ This circuit has recognized that impeachment should not be used "as a mere subterfuge to get before the jury evidence not otherwise admissible." *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984).[5] In *Webster*, this circuit expressed the concern that juries would miss or ignore the distinction between impeachment and substantive evidence and use this otherwise inadmissible evidence substantively against a party. Amtrak could not have introduced the military medical records as substantive evidence unless it had shown a causal connection to the present injury. *Pellegrini v. Chicago Great Western Ry. Co.*, 319 F.2d 447 (7th Cir.1963). No causal connection was shown. However, the admission of the 14 year old medical notations and employment application could have suggested to the jury that Taylor had a pre-existing injury about which he lied. Amtrak's post-trial characterization of this evidence as impeachment evidence appears to be an attempt to present the jury with otherwise inadmissible evidence in violation of the principles discussed in *Webster*. The district court abused its discretion by admitting the military medical records and employment application and by allowing Amtrak to pass these documents to the jury. Although Taylor did not raise the collateral evidence rule in this court or

mention it specifically in the district court, he did object to the use of the evidence (on grounds of relevance) in both courts, and we deem the error in admitting it for impeaching purposes "plain" within the meaning of Fed.R.Evid. 103(d).

### B. Limiting Instruction

■ Amtrak contends that Taylor could have avoided possible prejudicial error by requesting the judge to give a limiting instruction regarding the medical records pursuant to Fed.R.Evid. 105. This rule provides:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

*Id.* Before Rule 105 can come into play, however, the evidence must be admissible for at least one purpose. Because we have concluded that this evidence was not admissible for either substantive or impeachment purposes, Rule 105 is inapplicable.

### C. Motion for JNOV or New Trial

■ Having concluded that the district court erroneously admitted this evidence, we must now determine whether the district court erred in denying Taylor's motion for JNOV or alternatively a motion for new trial. This court recently discussed the differing standards of review for both types of motions in *Fleming v. County of Kane, State of Ill.*, 898 F.2d 553 (7th Cir. 1990). In reviewing a motion for JNOV:

> we must determine *de novo* 'whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed.'

**4.** Fed.R.Evid. 608(b) allows inquiry into specific instances of conduct on cross-examination if such conduct is probative of the witness' character for truthfulness or untruthfulness. The rule, however, explicitly prohibits the introduction of extrinsic evidence to prove the conduct. Therefore, even if Amtrak attempted to argue that this line of questioning was probative of Taylor's untruthfulness (an argument which is tenuous

at best), Amtrak still erred by introducing these extrinsic documents and passing them to the jury.

**5.** *Webster* discussed this improper use of impeachment evidence only in terms of criminal prosecutions. This reasoning logically extends to civil proceedings.

*Id.* at 559 (citations omitted).

A jury could have reasonably believed that Amtrak was not negligent. There was conflicting testimony concerning Amtrak employees' discretion in matters concerning lighting and the choice of tools. A reasonable juror could have believed that Taylor, as an experienced electrician, should have known to use a different tool and to forego salvaging the lockring. It is also reasonable for a jury to conclude that Taylor could have asked for instruction, but neglected to do so. As such, there is sufficient evidence to support the jury's verdict.

 In respect to Taylor's motion for a new trial:

> The test to be applied in determining whether a motion for a new trial should be granted is whether the verdict is against the weight of the evidence, that the damages were excessive, or that, for other reasons, the trial was not fair to the party moving.

*Id.*

This court will only reverse a district judge's denial of a motion for new trial in exceptional circumstances upon a clear showing that there was an abuse of discretion. *Id.* Both parties to this dispute provided evidence to support their positions. It was a close case, and the credibility of the witnesses played a very important role. Although it is true that Amtrak did provide other types of impeachment evidence, the inadmissible impeachment evidence was very damaging. Not only was Amtrak allowed to introduce evidence suggesting a previous injury, this tenuous evidence was used to bootstrap an argument that Taylor lied on his employment application. The admission of this evidence was an abuse of discretion. Taylor's case was prejudiced because the jury could have drawn several impermissible inferences from this evidence. We find this to be one of the exceptional cases where the district court's abuse of discretion warrants a reversal.

## CONCLUSION

The district court erred by allowing the defendant Amtrak to introduce evidence of fourteen year old military medical clinic records for the purpose of impeachment. The rule in this circuit is that a witness may not be impeached by extrinsic evidence concerning collateral matters elicited on cross-examination. This evidence in question clearly comes within the rule's prohibition. As Amtrak admits, this evidence could not have been introduced for any other purpose. Because both parties provided substantial support for their positions, the credibility of the witnesses could have played a major role in the jury's determination. The district court should not have allowed Taylor's credibility to be tainted based on the unreliable, irrelevant and immaterial military medical records. In addition, the admission of this evidence impermissibly allowed the jury to infer that Taylor had a prior back injury. Therefore, the district court's error was prejudicial to Taylor.

Taylor's motion for a new trial is granted and the decision of the district court is

REVERSED AND REMANDED.