Ross T. MOYLAN, Plaintiff–Appellant,

v.

The MEADOW CLUB, INC.,
Defendant–Appellee.

No. 91–2084.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1992.

Decided Nov. 17, 1992.

Ernest T. Rossiello (argued), Rossiello & Associates, Chicago, Ill., for plaintiff-appellant.

Andrew J. Fisher, Don E. Glickman (argued), Rudnick & Wolfe, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, FLAUM, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

FLAUM, Circuit Judge.

Ross T. Moylan filed suit against his former employer, The Meadow Club, Inc., alleging that he was entitled under the Fair Labor Standards Act, 29 U.S.C. § 213(a) (1988), to overtime pay for the nine-month period during which he served as the Meadow Club's resident chef. After a trial, the jury entered a verdict for the defendant, and the district court denied Moylan's motion for JNOV and motion for a new trial. Moylan appealed, alleging numerous evidentiary and procedural errors by the district court. In particular, Moylan contends that the Meadow Club should not have been permitted to impeach him with evidence that he failed to mention any claim to overtime compensation at the time he resigned from his position. Finding Moylan's grounds for appeal without merit, we affirm.

## I.

Ross T. Moylan began working for the Meadow Club, a private dining and health facility in Rolling Meadows, Illinois, on September 9, 1987, as a *sous* chef earning $9.26 per hour. Over the next two years, he steadily worked his way up the culinary ladder. On March 24, 1988, Moylan was promoted to the position of resident chef. In that job, he received a salary of $673 per week, did not punch a time clock, and was never paid for overtime work. Moylan's duties as resident chef, although sharply disputed at trial, included both supervision of the kitchen help and preparation of food. On January 1, 1989, Moylan became the executive chef of the Meadow Club, and acquired greater financial responsibilities for the kitchen and complete authority over kitchen operations. Only Moylan's tenure as resident chef—a period of approximately nine months—is at issue in this case, when Moylan worked 1242.5 overtime hours and allegedly earned overtime wages of $5488.46.

Moylan resigned from his post as executive chef on December 9, 1989. In mid-November, Moylan had told the club manager that he wanted to resign; he would stay on through the holiday season, but only on condition that he receive "all the cash due" him. Moylan then prepared a letter that embodied the terms of a severance agreement that he and the manager had worked out. The terms required the Meadow Club to pay Moylan's salary through the first four days of January 1990 and to settle up various sums that it owed Moylan from previous years, including vacation pay and bonus days off for good work. Neither in his conversations nor in his letter did Moylan mention a claim for overtime pay.

At trial, counsel for the Meadow Club cross-examined Moylan, over vigorous objections, about his meetings with the club manager and asked him to read the December 8 letter to the jury. The letter was then introduced into evidence. At the conclusion of the cross-examination, the court issued a limiting instruction in accordance with Federal Rule of Evidence 105. The court stated to the jury:

> This witness was questioned about whether he had asked for overtime of his employers, and he said he had not.
>
> Under the law an employee who has a valid claim for overtime does not lose his right to overtime simply because the employee does not ask for it. Indeed the law provides that even if an employee says don't pay me overtime, the employee is still entitled to overtime. There is, as I instruct you, no waiver, no voluntary giving up of a claim to overtime absent some circumstances that don't apply in this case.
>
> So the evidence was not introduced to establish that somehow Mr. Moylan gave up a claim for overtime.

However, evidence can be introduced to show that on a prior occasion a witness may have done or said something that is inconsistent with the witness' present testimony, and you can consider such acts or statements if you find them to be inconsistent in determining whether or not you are going to believe the witness. In this case the witness has testified that he was not in charge of the kitchen department and as he has said on several occasions that he acted under the direction of a particular person. These statements are being challenged in this case by the defendants, and they have offered this evidence about what he has said or did not say at other meetings on the theory that it is an action or omission or a statement that is inconsistent with the testimony he has given earlier.

Tr. at 135–36. In his closing argument, counsel for the defendant reiterated that Moylan's letter contained no claim for overtime pay.

## II.

Moylan's main argument on appeal is that the Meadow Club should not have been permitted to impeach him with evidence that he failed to seek overtime pay at the time of his resignation. Moylan contends that such evidence was excluded on his motions *in limine*, that it was improper impeachment, and that it was independently inadmissible as irrelevant under *Wirtz v. Turner*, 330 F.2d 11 (7th Cir.1964).

Before trial, Moylan presented two motions *in limine*, the first divided into multiple parts. Moylan had originally alleged that his termination by the Meadow Club was a retaliatory discharge, but he dropped this claim before trial. Part II of the first motion *in limine*[1] therefore sought to exclude evidence relating to "the circumstances surrounding [Moylan's] termination ... on the grounds that such claims have been waived by the plaintiff, and any such evidence is unrelated, immaterial and irrel-

evant to any issue of claim relating to overtime wages." Plaintiff's Motion in Limine at 2. This part of the motion was granted. Part III aimed to prevent admission of certain documentary evidence, and was denied. Part IV aimed at the testimony of three potential defense witnesses; the district court declined to rule on the motion at the time. The second motion *in limine* sought to exclude all evidence suggesting that "plaintiff acquiesced in the wages paid to him during the alleged overtime wage liability period ... on the grounds that such acquiescence is not controlling or relevant to the issue of back overtime wages due under FLSA." Plaintiff's Motion in Limine (No. 2) at 1. The district court also declined to rule on this motion.[2]

■ Moylan argues on appeal that introduction of the letter and cross-examination concerning the severance agreement violated the court's order *in limine*. Moylan contends that "[d]efendant was clearly admonished that it could not introduce evidence of the circumstances of plaintiff's resignation for purposes of impeachment, yet that is precisely what defendant did, to plaintiff's prejudice." Plaintiff's Brief at 19. Appellant's argument is disingenuous and without basis in the record. Read literally, part II of the first motion *in limine* indeed prohibited all references to the events surrounding Moylan's resignation. But the purpose of granting the motion—as counsel explained verbally at sidebar and spelled out in the motion itself—was only to prevent the Meadow Club from arguing against a retaliatory discharge claim that Moylan had himself initiated and then abandoned. The district court obviously did not mean to bar all mention of events that bore any connection to plaintiff's resignation. Indeed, the court declined to rule on Moylan's second motion to exclude precisely this evidence. Moylan cannot use the broad language of his first motion *in limine*—language he drafted

1. Part I contained only prefatory material.

2. The court stated that it would review the evidence later at an offer of proof. Moylan complains that the letter was admitted without such

an offer ever occurring, but the district court did not condition admissibility on that requirement.

himself—to sweep out of the courtroom all evidence of conversations and correspondence in which he defined the terms of his own resignation.

■ The method of impeachment in this case was impeachment by omission, a well-established, if slightly uncommon, subcategory of impeachment by contradiction. The theory of impeachment by omission is that "if [a] former statement fails to mention a material circumstance presently testified to, which it would have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent" to be admitted to impeach the present testimony. 1 John W. Strong, *McCormick on Evidence* § 34 at 114–15 (4th ed. 1992); *see also* 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 607[06] at 607–97 (1992); 3A James H. Chadbourn, *Wigmore on Evidence* § 1042 at 1057 (rev. ed. 1970). For example, in *United States v. Standard Oil Co.*, 316 F.2d 884, 892 (7th Cir.1963), a criminal antitrust case, this court held that it was error not to allow the defendant oil companies to ask a government witness whether, during a prior interview at which he was asked to relate his recollection of a telephone conversation he had had with an oil employee, he failed to mention certain incriminating details to which he later testified.

The Meadow Club argues that Moylan's failure to mention his claim to overtime pay in his December 1988 letter and conversations, at a time when he was trying to settle up accounts with his employer, amounted to an admission that he did not deserve any overtime wages. That implicit admission, in turn, undercut his trial testimony that his job as resident chef was non-managerial in nature and thus governed by the FLSA overtime provisions. At issue was the credibility of Moylan's description of his job in the kitchen—the tasks he performed, his financial responsibilities, his relationship with the kitchen staff, and so on. If Moylan believed while he was working at the Meadow Club that the tasks he performed as resident chef did not entitle him to overtime pay, that evidence casts a long shadow over his story at trial that in fact he occupied a non-managerial position and thus qualified for additional compensation.[3]

Moylan argues that the evidence should not have been admitted because it offended the well-established rule that employees cannot waive their entitlement to overtime wages under the FLSA. In *Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697, 706 (1945), the Supreme Court recognized that the FLSA's general aim of counteracting the unequal bargaining power of employers over their employees forbids the waiver of minimum and overtime wages. Subsequently, in *Wirtz v. Turner*, 330 F.2d 11, 14 (7th Cir.1964), we reversed a directed verdict entered by the district court against a mail carrier who sought to recover overtime pay, because the lower court had improperly concluded that the employee acquiesced in the wages paid to him.

In effect, Moylan argues that the evidence introduced for impeachment ran afoul of Rule 403, because its prejudicial effect, insofar as it suggested to the jury that Moylan had waived his claim, outweighed its probative value as impeachment evidence. At the outset, we note that "a trial judge's assessment of relative probative value and unfair prejudice is generally accorded great deference because of his first-hand exposure to the evidence and his familiarity with the course of the trial proceeding." *United States v. Briscoe*, 896 F.2d 1476, 1498 (7th Cir.) (citation omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). Moylan overstates the risk that prejudice occurred in this case. We consider it unlikely that jurors interpreted the letter as effecting a legal forfeiture of Moylan's right to overtime pay; more likely, it caused them to wonder why he did not ask for money that

---

**3.** Moylan argues that the letter could not be introduced as impeaching evidence because he never denied writing it. Moylan misconceives the nature of impeachment by omission. The statement being impeached was not that Moylan did not have conversations with the club manager or did not write a letter in December 1988, but the statement that he deserved overtime pay.

was due him, and then perhaps to wonder whether it was due him at all. Counsel for the Meadow Club, in his closing argument, properly cast the issue exclusively in terms of Moylan's credibility rather than the legal question of waiver. The district court also issued a cautionary instruction that carefully explained to the jury the purpose of the cross-examination of Moylan and warned them against drawing improper inferences.

Moylan insists, however, that the impeachment by omission was only a subterfuge to put before the jury evidence that would not otherwise have been admissible. Moylan cites two cases in which this court held that such tactics require reversal. In *United States v. Webster*, 734 F.2d 1191 (7th Cir.1984), we decided that it would be error, in a criminal case, for the prosecution to call a witness and then impeach him with out-of-court, inconsistent statements "just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence." *Id.* at 1192. In *Taylor v. National R.R. Passenger Corp.*, 920 F.2d 1372 (7th Cir.1990), we applied a similar rule to a civil case. Taylor suffered a back injury that admittedly occurred at work; the question was whether his employer had been negligent. During cross-examination, counsel for the defendant asked Taylor whether he had ever had back problems prior to the accident. After he denied the same, counsel introduced Taylor's military records, which recorded two occasions when Taylor had sought treatment for back pain, and his employment application, which indicated that he had never experienced back problems. The jury found for the defendant. On appeal, we held that

admission of the military records was plain error. This impeaching evidence concerned a collateral matter that was irrelevant to the main issues of the case. The records, moreover, would have been inadmissible for any purpose other than impeachment, since there was no showing of any causal connection between Taylor's earlier back troubles and his present injury. Recognizing the risk that the jury misconstrued the evidence as suggesting a different cause of the accident, we reversed the decision.

Neither case, however, applies to the instant situation. In *Webster* and *Taylor*, evidence was admitted under the guise of impeachment that would otherwise have been inadmissible—in *Webster*, because it was hearsay; in *Taylor*, because it was irrelevant. Here the evidence was not hearsay, but rather a party admission under Federal Rule of Evidence 801(d)(2). Nor was it irrelevant; the letter, with the omission, would have been admissible to show Moylan's understanding at the time of his resignation. Introduction of the letter here was not "subterfuge," because the evidence had legitimate impeachment and substantive uses.[4]

### III.

Moylan raises several other claims. At closing argument, counsel for the Meadow Club several times described Moylan's claim for overtime wages as a "hold up". Moylan now argues that "[i]mputing plaintiff with a crime" is improper and constitutes grounds for a new trial. We disagree. As a general matter, "improper comments during closing argument rarely rise to the level of reversible error," *Valbert v. Pass*, 866 F.2d 237, 241 (7th Cir. 1989), and considerable discretion is en-

4. Moylan claims that the jurors, in a conversation with the judge held after the verdict was announced, revealed that the impeaching evidence had had a prejudicial effect. The judge allegedly told counsel that jurors believed Moylan was willing to work for less money in the kitchen in order to attain the "golden ring" of a promotion. Moylan somehow regards this incident as a "textbook example" of unfair prejudice, reading these comments as showing that jurors swallowed the waiver argument whole. We see no reason to accept Moylan's spin on

these remarks; an equally plausible interpretation is that the jury believed Moylan labored in a menial job at first so that he could eventually become head chef. In any case, such speculation about the mental processes of jurors is completely without legal effect. Rule 606(b) of the Federal Rules of Evidence bars jurors from testifying about the reasons for their decisions; a jury's verdict cannot be impeached by extrajudicial statements of the jurors. *See Sims' Crane Service, Inc. v. Ideal Steel Products, Inc.*, 800 F.2d 1553, 1556 (11th Cir.1986).

trusted to the district court to supervise the arguments of counsel. *Canada Dry Corp. v. Nehi Beverage Co., Inc.,* 723 F.2d 512, 527 (7th Cir.1983). We do not believe that counsel's characterizations in this case, even if untoward, were sufficiently egregious to require reversal of the verdict. In all the cases plaintiff cites on this point, counsel violated established rules for closing argument. *See Gonzalez v. Volvo of America Corp.,* 752 F.2d 295, 298 (7th Cir.1985) (per curiam) (counsel referred to defendant's corporate status and wealth and asked jurors to place themselves in plaintiff's shoes); *Joseph v. Brierton,* 739 F.2d 1244 (7th Cir.1984) (counsel argued that a large judgment would ruin his clients, even though he knew they were fully indemnified by the state and had himself obtained an order *in limine* preventing plaintiff's counsel from mentioning the same); *Klotz v. Sears, Roebuck & Co.,* 267 F.2d 53, 54–55 (7th Cir.) (counsel asked jury "to give us the kind of deal that you would want to get"), *cert. denied,* 361 U.S. 877, 80 S.Ct. 141, 4 L.Ed.2d 114 (1959); *Levin v. Hanks,* 356 So.2d 21, 22 (Fla.App.1978) (counsel argued that plaintiff insurance company was seeking double recovery from defendant and from insured, even though the company was properly subrogated to its insured's rights). The remarks in this case contained nothing so prejudicial, and we therefore do not find error.

■ Still focusing on the closing arguments, Moylan argues that the district court erred in reversing the order of summations. It is customary for the party bearing the burden of proof to open and close the argument. *Silver v. New York Life Ins. Co.,* 116 F.2d 59, 62 (7th Cir.1940). That party is usually the plaintiff, but in this case the district court allowed the defendant to argue first and last, since the only remaining issue at closing was the Meadow Club's affirmative defense that

Moylan was exempt from the overtime pay provisions of the FLSA. The Meadow Club, in fact, conceded at closing that if Moylan was not exempt, the jury should award him the entire $5488 that he sought. The order of argument lies within the sound discretion of the district court, *see Montwood Corp. v. Hot Springs Theme Park Corp.,* 766 F.2d 359, 362 (8th Cir. 1985); *see also Moreau v. Oppenheim,* 663 F.2d 1300, 1311 (5th Cir.1981) ("The matter of a court's allocation of the right to open and close ... does not go to the merits of a controversy and has long not been the subject of writ of error."), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982), and we find no abuse here.

■ Finally, Moylan cites a litany of errors in the instructions given to the jury, most of which border on the frivolous.[5] As mentioned above, the only issue remaining in dispute at closing was whether Moylan was exempt from the FLSA's overtime provisions, which in turn depended on whether Moylan was employed in a bona fide executive capacity. 29 U.S.C. § 213(a)(1) (1988). The district court instructed the jury on this legal standard, but used the term "exempt manager" instead of "bona fide executive." Moylan contends that he was prejudiced by this substitution in nomenclature because the class of "managers" is broader than the class of "bona fide executives," and thus it was easier to prove that he belonged to the former. The district court, however, expressed concern that the jury might be confused by the statutory term, since none of the witnesses spoke of "bona fide executives" and since Moylan's title at one point had been "executive chef." The court nevertheless drew on the Labor Department's regulations defining "bona fide executive" to explain the concept of "exempt manager" to the jury. It also instructed the jury to focus on duties, rather than titles, to determine whether the plain-

---

5. Moylan charges that the district court should have instructed the jury that parties cannot contract to waive overtime pay, despite the fact that he neither submitted nor asked for such an instruction. In fact, the court instructed: "If an employee is not an exempt manager, he cannot waive his right to overtime wages." Moylan

also contends that the court should have given his proposed instruction concerning the measure of damages. Counsel for the Meadow Club, however, stated to the jury at closing that if Moylan was found non-exempt, they should award him the entire amount he sought.

tiff was entitled to overtime pay. We believe that the instructions communicated the correct message to the jury. *General Leaseways, Inc. v. National Truck Leasing Ass'n,* 830 F.2d 716, 725 (7th Cir.1987).

For the foregoing reasons, the judgment of the district court is AFFIRMED.