**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Thomas E. HAUERT, Defendant–Appellant.**

**No. 93–3171.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 7, 1994.

Decided Nov. 14, 1994.

Barry Rand Elden, Robert Michels (argued), Asst. U.S. Attys., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Raymond D. Pijon, Chicago, IL (argued), for defendant-appellant.

Before POSNER, Chief Judge, and EASTERBROOK and WELLFORD,* Circuit Judges.

WELLFORD, Circuit Judge.

After conviction by a jury in the district court for tax evasion (violation of 26 U.S.C.

* The Honorable Harry W. Wellford, United States Circuit Judge for the Sixth Circuit, sitting by designation.

§ 7201) and for failure to file tax returns for the calendar years 1988 through 1991 (violation of 26 U.S.C. § 7203), defendant, Thomas E. Hauert, has appealed his convictions and sentences to this court. Conceding that he had failed to file federal income tax returns since 1986, Hauert first maintains that the district court erred "in allowing the government to introduce evidence of defendant's compromise and settlement negotiations in a 1984 civil tax case." Next, he asserts error by the trial judge in "denying defendant an opportunity to present lay opinion testimony ... relevant to the issue of good faith." Hauert also challenges certain jury instructions given by the district court applicable to his claimed "good faith" defense. He avers, moreover, prosecutorial misconduct denying him a fair trial, and, finally, that the government erroneously shifted the burden of proof from the prosecution. We discuss these grounds of Hauert's appeal seriatim.

## I. BACKGROUND

Hauert worked regularly for the Caterpillar Company for many years including the years in question, and received payment for his earnings that mandated filing a federal income tax return for each of the years in contention, unless "excused" from criminal liability for his failure to file by reason of his so-called "good faith misunderstanding of the law" defense. This court is aware at the outset that we decided in 1989, after argument in 1988, that an "objectively reasonable standard" was to be applied in this type of criminal tax liability situation involving charges of tax evasion and failure to file federal income tax returns. *United States v. Cheek*, 882 F.2d 1263, 1265 (7th Cir.1989), *cert. granted*, 493 U.S. 1068, 110 S.Ct. 1108, 107 L.Ed.2d 1016 (1990), *vacated*, 498 U.S. 192, 201, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991) (eliminating "objectively reasonable standard"). The tax years 1980 through 1986 were involved in the *Cheek* case.[1]

## II. EVIDENCE OF PRIOR TAX SETTLEMENT

Hauert objected to the testimony and evidence involving his claimed tax exempt status asserted on W–4 withholding tax forms for his salary during 1980 and 1981. (Hauert maintains in his brief that he also claimed exempt status for the years 1988 through 1991.)

Hauert was audited by the Internal Revenue Service ("IRS") because of certain partnership income purportedly attributable to him in 1980 or 1981. During the course of the IRS' audit for those years, Hauert asserted in a letter that "I have abandoned my constitutional challenge for those years." Hauert claims that allowing the government to introduce this and other evidence of his dealings with IRS agents indicating an abandonment of any constitutional challenge to the taxability of his Caterpillar earnings was prejudicial error. There was also evidence admitted at trial, over defendant's objection, of his signing settlement documents in 1984 foregoing a contention that his wages or salary were not taxable.

Hauert does not contest that evidence of his prior compliance with the laws he later claimed to misunderstand in earlier tax years is not admissible. This evidence is relevant to his actual subjective intent and his understanding of his income tax obligations to file and to pay tax on earnings from employment. Defendant argues that the evidence of his conduct during the income tax audit during 1984 is "irrelevant," "cumulative," and "contrary to policy concerning settlement."

Defendant's reliance on *United States v. Robertson*, 582 F.2d 1356 (5th Cir.1978), in support of the above contention, is misplaced. *Robertson, not* a tax case, involved a drug charge and admissions made by a defendant to DEA agents in a parking lot. The *Robertson* court discussed Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 with regard to admissibility of statements " 'in connection with, and relevant to' an offer to *plead guilty*." 582

---

1. Since the government concedes that *Cheek* principles, as enunciated by the Supreme Court in 1991, do not retroactively apply to all the tax years at issue in this indictment, we are not called upon to decide any possible retroactivity problem. We must apply *Cheek*, then, to all the issues involved in this case by reason of Hauert's "good faith misunderstanding of the law" defense.

F.2d at 1364 (emphasis added). Among other things, in overruling defendant's contentions in that case, the *en banc* court observed that "[c]ourts have been very reluctant to allow an accused to withdraw a guilty plea merely on allegations of a misunderstanding resulting from an accused's purely subjective beliefs." *Id.* at 1367.

Nor do we believe that FED.R.EVID. 408 is of assistance to defendant in respect to this assertion of error. Among other things, while generally proscribing admissibility of "conduct or statements made in compromise negotiations," this rule adds that it "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations," and also "when the evidence is offered for another purpose." *See* FED.R.EVID. 408. In adopting this language, the Conference Committee Report explained that "evidence of facts disclosed during compromise negotiations is not inadmissible." *See* H.R.CONF. REP. No. 1597, 93d Cong., 2d Sess. 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7099.

The purpose of the evidence in question was to show Hauert's knowledge and intent regarding his obligation to report and pay taxes on his Caterpillar (and other) earnings. As stated in *Cheek,* "in deciding whether to credit [defendant's] good-faith belief claim, the jury would be free to consider any admissible evidence from any source showing that [defendant] was aware of his duty to file a return and to treat wages as income." *Cheek,* 498 U.S. at 202, 111 S.Ct. at 611. The evidence involving the earlier years may not have been admissible to show Hauert's civil tax liability in. those earlier years or to his claims or the government's claims in the context of civil tax liability. This evidence was admissible under Rule 408 for "another purpose" in this case. *See United States v. Birkenstock,* 823 F.2d 1026, 1028 (7th Cir. 1987).

As stated in a case cited by defendant, "Federal Rule of Evidence 408 permits evidence of settlement agreements for purposes other than proving liability." *United States v. Hays,* 872 F.2d 582, 588–89 (5th Cir.1989).[2] The evidence in question was admitted to show whether Hauert knew "what the law is" and his "legal duty" thereunder. *See Cheek,* 498 U.S. at 202, 203 n. 8, 111 S.Ct. at 611 n. 8. We find that the district court was acting within its sound discretion by admitting the evidence at issue. *See also United States v. Farmer,* 924 F.2d 647 (7th Cir.1991); *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.,* 687 F.2d 182 (7th Cir.1982).

We are not persuaded by Hauert's contentions in this regard.

### III. *LAY OPINION TESTIMONY*

■ Hauert recognizes "the special limitations imposed upon opinion evidence by expert witnesses under Rule [FED.R.EVID.] 704(b)," and thus does not appeal the district court's decision to preclude a proffered psychiatric opinion that he was "credible, sincere and manifests a good faith belief" with respect to IRC obligations. He argues, however, that it was prejudicial error under FED. R.EVID. 701 and 704(a) to prevent such testimony from lay witnesses who were fellow employees and long-time friends. In particular, Hauert sought to present these witnesses to attest to his sincerity about his income tax beliefs. He relies upon the following language of FED.R.EVID. 701:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

*See* FED.R.EVID. 701.

Hauert also relies upon that portion of FED.R.EVID. 704(a), which permits opinion evidence embracing an ultimate issue. The district court ruled that the lay opinion evidence sought to be introduced was substan-

---

**2.** *Hays,* also not a tax case, held that district courts have wide discretion in determining relevancy under Rule 401. *Hays,* 872 F.2d at 587. *Hays* also indicated that evidence that defendant was engaged in conspiratorial conduct could not be admitted under Rule 408 by introducing evidence of prior settlement agreements between defendant and others alleged to be co-conspirators. *Id.* at 589. *Hays* is otherwise distinguishable from the instant case, in our view.

tially the same as the proffered expert evidence, which was barred under FED.R.EVID. 704(b). The district court barred such lay opinion testimony dealing with defendant's subjective sincerity, motivation, knowledge, or state of mind. The district court did not prevent the lay witnesses from testifying about the context of their association and contact with Hauert, but foreclosed their opinions about his sincerity and "good faith" belief. The government maintains that issue should be governed by Rule 701, rather than Rule 704, although it, of course, agrees with the result reached by the district court. Rule 701 deals generally with "opinion testimony by lay witnesses." Although a lay witness may, in appropriate circumstances, give an opinion on an "ultimate issue," we agree that the basic inquiry with respect to the district court's evidentiary rulings on lay witness testimony is governed by FED. R.EVID. 701.

In offering the testimony of these witnesses, defendant's lawyer described them as "credibility witnesses," and then there was discussion about FED.R.EVID. 608, regarding opinion about defendant's reputation, and limiting their testimony to opinion of Hauert's character and reputation as to truthfulness. Defendant's attorney objected to being limited so as not to ask these witnesses about Hauert's "sincerity." Defendant's attorney added that these witnesses had "numerous conversations and interactions" with Hauert "on the issue of taxation, and have formulated opinions as to whether he is sincere and believes his statements." The district court ruled, however, without specific reference to Rule 701, that these witnesses would not, under the circumstances, be permitted to give opinions about defendant's "mental state or condition constituting any element of the crime charged ... a totally subjective matter." The district court summarized its ruling by concluding that lay witness opinion testimony on Hauert's "state of mind" or the sincerity of his "good faith" defense "is not appropriate."

Defendant's counsel made no further specific proffer as to the content of the proposed testimony nor did he offer any witness outside the presence of the jury to make a record of it. These five witnesses did testify to Hauert's reputation for truthfulness, his employment, and his active church involvement. Witness Holman testified that Hauert was a "sincere and honest person." Witness Dobsczyle added that Hauert was "one of the most truthful, honest people that I have ever met." Witness Acosta, a close friend, supplemented the opinion of truthfulness to state: "I don't think you could find anybody that would say a bad thing about him." [3]

On the issue of lay opinion testimony concerning Hauert's knowledge of tax law requirements, we agree with the opinion in *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir.1992), that opinion testimony on a party's knowledge of the law "in most instances ... will not meet the requirements of Rule 701." If offered, then, to show Hauert's knowledge, or lack thereof, about filing returns and reporting wages and other receipts as income, we believe the district court did not abuse its discretion in denying lay testimony to this effect.

The opinion testimony introduced by defendant that Hauert was "honest, sincere," and a good person generally did come into evidence. That evidence bore upon his "good faith" defense. Whether the evidence would be, as required by Rule 701, "helpful to a clear understanding" of Hauert's testimony and position is essentially a matter of sound judgment and within the discretion of the district court. "[U]ltimately, the question of whether a lay opinion falls into the category of 'meaningless assertion' or whether that opinion actually will help the jury decide an issue in the case is a judgment call for the district court." *United States v. Allen*, 10 F.3d 405, 415 (7th Cir.1993).

We consider here a ruling on admissibility of lay witness opinion, testimony about a defendant's state of mind, his intent or belief with particular reference to Rule 701(b)—

---

**3.** Acosta also was permitted to testify, outside the jury's presence, that he had accompanied Hauert to an IRS office and that Hauert pursued many income tax questions that were not answered, but the district court reserved a ruling on the admissibility of this testimony. Hauert's counsel made no further motion to introduce this testimony before the jury.

**202**

whether the evidence would be "helpful to a clear understanding" of the issues by a jury. *United States v. Guzzino,* 810 F.2d 687, 699 (7th Cir.), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1957, 95 L.Ed.2d 529 (1987). While the district court's analysis was not as clear as we would have liked, we find no abuse of discretion, no clear error, in the preclusion of this lay opinion evidence under the circumstances of this case. We believe that by the nature of a tax protestor case, defendant's beliefs about the propriety of his filing returns and paying taxes, which are closely related to defendant's knowledge about tax laws and defendant's state of mind in protesting his taxpayer status, are ordinarily not a proper subject for lay witness opinion testimony absent careful groundwork and special circumstances not present here.[4] In this case, such testimony was not helpful to the jury.

## IV. *JURY INSTRUCTIONS*

■ Citing *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), defendant objects to the district court's instruction on the government's burden to prove that he acted "willfully" with respect to his charged violations of the income tax laws.[5] Hauert argued the *Cheek* case rationale to the jury, maintaining that his knowledge and belief are based upon subjective standards ("this calls for you [the jury] to enter into the mind and mental processes of this man"). The district court's instructions did not use the word, "subjective standard," as to Hauert's claim of good faith belief, but used the following language:

> If the defendant, in good faith, believed that tax laws did not require that he file individual tax returns for a particular year, then any failure to file any income tax return for that year cannot be found to be willful, even if such belief was incorrect. Similarly, if the defendant in good faith

believed that under the law he did not have any income tax obligation for a particular year, then any failure to pay income taxes for that year cannot be found to be willful, even if such belief was incorrect.

However, a disagreement with the tax laws or a personal belief that the tax laws are unconstitutional, no matter how earnestly believed, will not negate willfulness. It is the duty of all citizens to obey the law whether they agree with it or not.

*Cheek* referred to the holding of *United States v. Murdock,* 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), that "defendant was entitled to an instruction with respect to whether he acted in good faith based on his actual belief." *Cheek,* 498 U.S. at 200, 111 S.Ct. at 610. *Cheek* also referred to *United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (per curiam), that the statutory language "required a finding of bad purpose or motive." *Cheek,* 498 U.S. at 200, 201, 111 S.Ct. at 609, 610. *Cheek* concluded that "the standard for the statutory willfulness requirement is the 'voluntary, intentional violation of a known legal duty.'" *Id.* at 201, 111 S.Ct. at 610. *Cheek,* in our opinion, does not mandate the use of the word "subjective" or words "subjective standard" as argued by defendant. It does require the elimination of the words, "objectively reasonable," *id.,* as applied to a willful violation of a known legal duty.

The district court did eliminate any reference in its instructions to an objectively reasonable standard or to the measure of the conduct of a reasonable taxpayer. We believe the instructions given, taken as a whole, conform to the Supreme Court's requirements in *Cheek:*

> In the end, the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunder-

---

4. Even if such lay witness opinion evidence were deemed helpful and relevant by the district judge, he may still consider, under FED.R.EVID. 403, whether such evidence should be excluded as "substantially outweighed by the danger of unfair prejudice ... or [the] needless presentation of cumulative evidence." *See* FED.R.EVID. 403.

5. In his closing argument, Hauert's counsel stated that the government had to prove beyond a reasonable doubt that "Mr. Hauert has willfully and with the intention to disobey the law done certain things."

standing and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable.

*Id.* at 202, 111 S.Ct. at 611.

The jury was adequately instructed about defendant's good faith belief defense, a belief "that tax laws did not require that he file individual tax returns for a particular year." The district court also instructed the jury that if the government failed to prove beyond a reasonable doubt that he had no such good faith belief, his failure to file a return or pay income taxes for a particular year was not a "willful" violation of his duty. The district court instructed the jury that the government was required to prove a "willful" violation, one that was "voluntary and intentional."

We are not prepared to adopt the reasoning of *United States v. Pabisz,* 936 F.2d 80, 83 (2d Cir.1991), that the district court, in dealing with the good faith defense, must either instruct the jury to consider "whether [defendant] subjectively believed that he did not need to file income tax returns or pay taxes," or "that defendant's beliefs need not be objectively reasonable." *Pabisz* may be distinguishable, however, because the prosecutor urged the jury to consider whether defendant "had to know *objectively* if whether [sic] he had to file," [6] and that was not done in this case. *Id.* (emphasis added).

■ Nor do we find the district court's instructions on the definition of a *known* duty to be in error as contended by defendant. Finally, we find no error in the court's instruction that "[n]o person can intentionally avoid knowledge by closing his or her eyes to information or facts which would otherwise have been obvious." *See, e.g., United States v. Ramsey,* 785 F.2d 184, 190 (7th Cir.), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986).[7] We do not agree with

defendant that this instruction shifted the burden of proof to the defendant. *United States v. White,* 794 F.2d 367, 371 (8th Cir. 1986).

We have examined the district court's instructions in their totality. We are not persuaded by defendant's contentions that these instructions dealing with good faith, willfulness and knowledge were "equivocal, conflicting and inaccurate." We, therefore, reject the assignment of error that we must reverse because of prejudicial error in the jury instructions.

## V. *PROSECUTORIAL MISCONDUCT*

### A. *Argument*

■ Defendant recites a litany of actions by the prosecutor in this case, including principally, a "personal appeal to the jury" and "emphasis on each citizen's duty to pay income taxes." We have reviewed the record carefully and find no reversible error in this respect. In particular, we note no error in arguing that Hauert is "subject to the tax laws ... just like the rest of us." The issue raised by defendant was not the constitutionality or the validity of the tax laws; rather, he claimed that in "good faith" he did not believe that these laws were applicable to him, and that he did not "willfully violate these laws with respect to the criminal charges made against him."

■ Hauert also complains that the prosecutor reminded the jury that if they were not convinced that Hauert was acting in good faith, Hauert would be "vindicated" in his contentions and would be getting "a free ride." The fact is that Hauert essentially was claiming that he should not be treated like others because of his own peculiar "good faith" convictions about not being under a

---

6. In *Pabisz,* the prosecutor also argued that defendant's beliefs were "totally unreasonable." *Pabisz,* 936 F.2d at 83. *United States v. Powell,* 936 F.2d 1056 (9th Cir.1991), also cited by defendant, is distinguishable because the district court there instructed the jury that to succeed in their good faith defense, defendants had to have an *"objectively* reasonable belief." *Id.* at 1061. (*Powell* was subsequently amended and superseded at 955 F.2d 1206 in light of *Cheek* ).

7. The facts of this case " 'support the inference that the defendant was aware of a high probability of the existence of the fact in question [tax liability] and purposely contrived to avoid learning all of the facts.' " *United States v. de Francisco–Lopez,* 939 F.2d 1405, 1409 (10th Cir.1991) (quoting *United States v. Alvarado,* 838 F.2d 311, 314 (9th Cir.1987), *cert. denied,* 487 U.S. 1222, 108 S.Ct. 2880, 101 L.Ed.2d 915 (1988)).

duty to file tax returns and pay taxes in the fashion most taxpayers do.

If the prosecutor overstated the theme of the effect of vindication in some respects and urged that Hauert not go "home free," we are not convinced that such error, if any, was prejudicial in the context of the entire trial. We are satisfied, in short, that the prosecutor's conduct did not deprive Hauert of a fair trial, although we do not condone the prosecutor's impugning of defendant's patriotism. Defendant concedes that improper argument "rarely rise[s] to the level of reversible error," and we think it has not risen to that level here. As in *Moylan v. Meadow Club, Inc.,* 979 F.2d 1246, 1251 (7th Cir.1992), "[w]e do not believe that counsel's characterizations in this case, even if untoward, were sufficiently egregious to require reversal of the verdict."

### B. *Gabe Thompson Episode*

■ Defendant admitted during his testimony that his friend and co-employee, Gabe Thompson, tutored him and persuaded him to reach his position on non-taxability of his wages and in not filing income tax returns. He claims it was reversible error for the prosecutor to ask him if he knew whether Thompson was convicted of income tax evasion. Defendant's prompt objection was sustained. We, again, find no reversible error in this respect. Indeed, we express no opinion as to whether such evidence may have been admissible under the circumstances of this case. The believability of Thompson, a close friend, associate and advisor, may well have been an appropriate subject of cross-examination. The district court precluded any answer and perhaps should have advised the jury that whether Thompson was convicted of tax evasion had no direct bearing on the guilt or innocence of defendant Hauert. The mere asking of this question is not,

however, a basis for reversing Hauert's conviction.

### C. *Other Prosecutorial Conduct*

■ Hauert claims that the government attempted to shift the burden of proof in this case. The district court, however, gave the following clear instruction about the burden of proof:

> The indictment in this case is a formal method of accusing the defendant of a crime and placing him on trial. It is not evidence against the defendant and does not create any inference of guilt.

> The defendant is presumed to be innocent of the charges. This presumption remains with the defendant throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

> The government has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the government throughout the case. The defendant is not required to prove his innocence or to produce any evidence.

The district court further charged the jury that the government had to prove that defendant's actions were willful. The prosecutor made a misstatement of the law in argument indicating that Hauert had to convince the jury that he had a good faith belief, but added immediately: "If you think he has a good faith belief, then you are right, he is home free." Defendant's objection to this misstatement was promptly sustained by the trial court. The prosecution told the jury that they might consider whether Hauert's claim of good faith was "reasonable,"[8] and reiterated the erroneous statement that defendant had to convince the jury of his good faith belief. Although this was an incorrect

---

8. *See United States v. Cheek,* 3 F.3d 1057, 1063 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1055, 127 L.Ed.2d 376 (1994). Cheek was convicted again by the jury after remand of his case by the Supreme Court. After the Supreme Court's 1991 decision in *Cheek,* one commentator observed:

> [T]he high Court's affirmance of the subjective standard will no doubt embolden at least some

factions of the tax protestor movement into continuing their struggle ... [F]uture defendants [will] continue to attempt to circumvent the tax laws, and then defend their actions on the basis of beliefs subjectively held in good faith.

Anthony Michael Sabino, *Revising the Willfulness Standard for Federal Tax Crimes: The Road from Bishop to* Cheek, 11 Rev.Litig. 1, 42 (1991).

argument, the district court's instructions made it clear that the burden of proof remained with the government throughout. We find no reversible error by reason of the prosecutor's misstatement.

For the reasons indicated, we AFFIRM the jury verdict and the judgment of the district court. The writer must add that Justice Blackmun's dissent in *Cheek* evidences considerable prescience: "This Court's opinion, today, I fear, will encourage taxpayers to cling to frivolous views of the law in the hope of convincing a jury of their sincerity." *Cheek*, 498 U.S. at 210, 111 S.Ct. at 615.